# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

        Plaintiff,        Case No. 18-20315

v.                               Judith E. Levy
                                United States District Judge
Keith Kennedy (D-3),        Elizabeth A. Stafford
                                Magistrate Judge
        Defendant.

_____/

## ORDER TEMPORARILY REVOKING DETENTION

On March 11, 2020 Magistrate Judge David Grand detained Defendant Keith Kennedy subject to a bond review hearing before Judge Judith Levy. (*See* ECF No. 71.) Judge Grand detained Defendant due to several violations of his pretrial release conditions, including the following: failing several drug screens, failing to report to pretrial services, failing to report to inpatient substance abuse treatment, and failing to report for a bond review hearing. (*See id.*; ECF No. 58.) On March 26, 2020, the Court conducted a bond reviewing hearing of Defendant's confinement at the Saginaw County Jail. The hearing took

place telephonically due to federal, state, and court stay-at-home directives in response to the COVID-19 pandemic.

The Court is authorized to revisit the Magistrate Judge's order pursuant to 18 U.S.C. § 3145(b). As set forth below, the Court finds that it is necessary to temporarily release Defendant, pursuant to 18 U.S.C. § 3142(i)(4), *see infra* pg. 8, for two reasons. First, under the facts of this case, the danger posed to Defendant in the Saginaw County Jail by the COVID-19 pandemic constitutes an independent compelling reason to temporarily release him from custody. Second, temporary release is necessary for Defendant to prepare his pre-sentencing defense.

**BACKGROUND**

On March 22, 2020, the Governor of Michigan issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020).

Since March 11, 2020, the date of Defendant's hearing before Magistrate Judge Grand, the exceptionally dangerous nature of the COVID-19 pandemic has become apparent. On March 10, 2020, the Governor of Michigan announced the state's first two cases of COVID-19 and simultaneously declared a State of Emergency. Executive Order, No. 2020-4 (Mar. 10, 2020). The number of new cases is growing exponentially. As of March 27, 2020, that number is now at 3,657 confirmed cases and 92 known related deaths. *See Coronavirus*, Michigan.Gov, https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html. COVID-19 has a high risk of transmission, and the number and rate of confirmed cases indicate broad community spread. Executive Order, No. 2020-20 (Mar. 22, 2020). Indeed, as of March 27, 2020, Michigan jails are attempting to lower their detained populations "as officials scramble to remove people thought to be at high risk of contracting the coronavirus, but little risk to the general public if they were not behind bars." James David Dickson, *Jail populations plunge in Metro Detroit as coronavirus spreads*, Detroit News (March 27, 2020), https://www.detroitnews.com/story/news/local/macomb-

county/2020/03/27/jail-populations-plunge-metro-detroit-coronavirus-spreads/2914358001/. Defendant's case fits this description.

On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html [Hereinafter "CDC Guidance 3/23/2020"]. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id.*

The CDC recommended that all correctional facilities take preventative measures, including: ensuring an adequate supply of

hygiene and medical supplies, allowing for alcohol-based sanitizer throughout facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, increasing space between all detained persons to at least six feet, staggering meals, and having healthcare staff perform regular rounds. *Id.* Even if all of the CDC's interim recommendations are followed, and this record suggests that they are not, the Court is concerned that such measures will prove insufficient to stem deadly outbreaks. *See, e.g.*, *New York City Board of Correction Calls for City to Begin Releasing People From Jail as Part of Public Health Response to COVID-19*, N.Y.C. Bd. of Corr. (Mar. 17, 2020), https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.03.17%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (arguing that, despite the "heroic work" of Department of Correction and Correctional Health Services staff "to prevent the transmission of COVID-19 in the jails and maintain safe and humane operations, the City must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances"). Indeed, on March

5

26, 2020, Attorney General Barr issued a separate directive ordering the Director of the Bureau of Prisons to "prioritiz[e] home confinement as appropriate in response to the COVID-19 pandemic . . . to protect the health and safety of BOP personnel and the people in our custody." *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020).

Research shows that prisoners and jail inmates are more likely than the general population to report experiencing infectious diseases, indicating that these individuals face a heightened risk during this pandemic.[1] Laura M. Maruschak et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Department of Justice, Bureau of Justice Statistics, (2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

By way of example, Michigan prisons are beginning to prepare "contingency plans" for extreme outbreaks, but the evidence suggests that it is only a matter of time before a deadly outbreak occurs for which

---

[1] As of March 26, 2020, there have been fourteen confirmed cases of a Michigan prisoner testing positive for COVID-19, up from one case on March 24, 2020. Gus Burns, *Michigan prisons prep for possibility of coronavirus outbreak among inmate population*, M-Live (Mar. 26, 2020), https://www.mlive.com/public-interest/2020/03/michigan-prisons-prep-for-possibility-of-coronavirus-spread-among-inmate-population.html.

the prison system is woefully unprepared. *See id.* ([The Michigan Department of Corrections spokesperson] "said administrators haven't projected how many inmates might eventually contract the highly contagious virus, and he didn't immediately know how much quarantine space is available throughout the prison network.") Because many individuals infected with COVID-19 do not display symptoms, the virus will almost certainly be present in jails and prisons before cases are formally identified.

During the March 26 hearing, Defendant credibly testified that he has conditions which render him particularly vulnerable to COVID-19. Defendant, who was audibly ill with congestion and who coughed intermittently throughout the call, testified that he is exhibiting flu-like symptoms. Defendant also credibly testified that Saginaw County Jail has not been treating his underlying conditions or his flu-like symptoms. He testified that, prior to detainment, he was on high blood pressure medication, thyroid medication, and blood sugar medication. Despite these conditions and symptoms, Defendant testified that he was not being provided with these medications, not having his blood pressure taken regularly, not having his thyroid tested, not having his

7

temperature taken regularly, and unable to access to tissues into which he could sneeze or cough.[2] Defendant also testified that the detainees had no access to hand sanitizer and were instead provided with a small bar of soap once a week.

**LAW AND ANALYSIS**

Where a detention order has been issued, the Court is permitted to issue a "subsequent order" temporarily releasing an individual in custody "to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4). While the language of § 3142(i)(4) appears under the heading "Release or detention of a defendant pending trial," this provision applies to Defendant even though he has pled guilty and is thus pending sentencing rather than trial. The language specifies that the Court may permit temporary release "by subsequent order." *Id.* The Court's current directive is a "subsequent order," issued subsequent to a prior detention order under 18 U.S.C. § 3142.[3] *United States v. Thornton*, 787 F.2d 594, 594 (6th Cir. 1986) (Table

---

[2] Defendant did testify that the detainees had access to toilet paper.
[3] The Court notes that typical post-plea releases involve a finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety

8

decision) (suggesting that a district court could temporarily release a detainee pursuant to § 3142(i)(4) by subsequent order even after a prior order holding that the detainee was a flight risk or a risk to public safety); *United States v. Dante Stephens*, No. 15-cr-0095, 2020 WL 1295155, *3 (S.D.N.Y. Mar. 19, 2020) (holding that 18 U.S.C. § 3142(i)(4) constitutes a "separate statutory ground" for post-conviction release).

---

of any other person or the community." 18 U.S.C. § 3143(a)(1). However, it is unnecessary for the Court to make a finding under 18 U.S.C. § 3143, because the Court is releasing Defendant pursuant to the independent statutory ground 18 U.S.C. § 3142(i)(4). Nevertheless, the Court finds, by clear and convincing evidence based on Defendant's actions and testimony, that Defendant would not pose a danger to the safety of any other person or to the community. The Court notes that Defendant testified under oath about his concern for his aging parents and his desire to remain at home, in quarantine, to support them. Defendant was solemn, thoughtful, and responsive to the Court's questions and concerns. Defendant does not have a violent history. The Court found Defendant to be a credible witness when discussing his health and treatment at Saginaw County Jail, his willingness to cooperate with Probation, and his motivation for staying at home once released.

The Court also notes that any § 3143(a)(1) considerations would need to account for the restricted flight possibilities presented by the current COVID-19 pandemic, as well as "balance the public health safety risk posed by the continued incarceration of [] defendants in crowded correctional facilities with any community safety risk posed by a defendant's release." *See Karr v. State*, No. A-13630, 2020 WL 1456469, *3 (Alaska Ct. App. Mar. 24, 2020); *see also Matter of Extradition of Toledo Manrique*, No. 19-71055, 2020 WL 1307109, *1 (N.D. Cal. Mar. 19, 2020) ("This [flight risk] problem has to a certain extent been mitigated by the existing pandemic. The Court's concern was that Toledo would flee the country, but international travel is hard now. Travel bans are in place . . .")

For the reasons below, the Court finds that temporary pretrial release is necessary for the compelling reason that it will protect Defendant, the prison population, and the wider community during the COVID-19 pandemic, and also that pretrial release is necessary for the preparation of Defendant's pre-sentencing defense.

Section 3142(i) does not define "compelling reason," and the Sixth Circuit has yet to interpret this statutory language. However, as courts across the country have begun to recognize, the global health crisis posed by COVID-19 necessitates informed, speedy, and preemptive action to reduce the risk of infection, illness, and death to prisoners and prison officials alike. *See Xochihua-Jaimes v. Barr,* No. 18-71460, ECF No. 53 (9th Cir. Mar. 23, 2020) (*sua sponte* ordering release of non-citizen from immigration detention center "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers."); *United States v. Perez*, No. 19-cr-00297, ECF No. 62 (S.D.N.Y. Mar. 19, 2020) (finding that the defendant's heightened risk to COVID-19 complications constitutes a compelling reason for release under § 3142(i)); *United States v. Barkman*, No. 19-cr-0052, 2020 U.S. Dist. LEXIS 45628, at *11 (D. Nev. Mar. 17,

2020) (granting emergency relief amending probation order to delay confinement for thirty days because of risk of infection to both Defendant and others in jail). Under any possible interpretation of Section 3142(i)'s language, current events and Defendant's particular vulnerability to the disease constitute a compelling reason for release under § 3142(i).

Even if Defendant did not have a heightened susceptibility to COVID-19, the public health crisis—and its impact on Defendant's ability to present a defense—nonetheless satisfies § 3142(i). Saginaw County Jail has suspended on-site visitation "due to coronavirus concerns." Brianna Owczarzak, *MDOC halts visits to MI prisons due to coronavirus concerns* (March 13, 2020), https://www.wnem.com/news/mdoc-halts-visits-to-mi-prisons-due-to-coronavirus-concerns/article_cbb094ea-6530-11ea-8dcc-6f67de338459.html. The Federal Bureau of Prisons and Michigan Department of Corrections have also broadly suspended on-site visits in light of coronavirus concerns. *See* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp (explaining the nationwide suspension and noting that "case-by-case accommodation

will be accomplished at the local level"); Michigan Department of Corrections, *MDOC Halts All Visits at State Prisons* (Mar. 13, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163-521571--,00.html.

Defendant and his attorney, Mr. Kinney, testified specifically to their difficulty in conducting attorney-client communications under current conditions. Defendant testified that his attorney was able to call him, but unable to visit him to prepare for this hearing. Mr. Kinney additionally testified that, though he was able to speak by phone with his client, he was unable to receive assurances from the facility that the calls were private. Mr. Kinney noted that he was "not comfortable that [he and Defendant] could actually talk about anything over the phone," because "there's certain things that I don't want him to say" without a guarantee of attorney-client privacy.

These communication difficulties are endemic to confinement during the current pandemic and, under the facts of this case, further support Defendant's release under § 3142(i). Defendant has an upcoming bond review hearing on June 4, 2020 and an upcoming sentencing hearing on July 28, 2020. (ECF Nos. 75, 76.) Release is necessary in order

to allow Defendant to adequately prepare and consult with defense counsel for these proceedings. *See Stephens*, 2020 WL 1295155 at *5 (holding that Defendant's inability to communicate regularly and effectively with counsel in light of BOP's visitation policies satisfied requirements for release under § 3142(i)).

The United States argues that release is improper here because it was unaware of any known COVID-19 cases at Saginaw County Jail. However, this argument fails to address the facts of the current global public health crisis—particularly as Michigan prisons are beginning to see exponential spread of the disease. *See* Burns, *supra*. The seemingly preemptive nature of Defendant's release renders it no less necessary or compelling. To the contrary—as the above background makes clear—waiting for either Defendant to have a confirmed case of COVID-19, or for there to be a major outbreak in Defendant's facility, would render meaningless this request for release. Such a failure to act could have devastating consequences for Defendant and would create serious medical and security challenges to the existing prison population and the wider community.

**CONCLUSION**

Defendant has set forth compelling reasons for his temporary release amidst this growing public health emergency. Accordingly, Defendant is immediately released pursuant to the conditions set forth in the bond documents, with the additional modification that Defendant is to self-quarantine for 14 days as discussed during the hearing.

The Court will revisit this Order in four months.

IT IS SO ORDERED.

Dated: March 27, 2020             s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                                             United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2020.

                                                      s/William Barkholz
                                                      WILLIAM BARKHOLZ
                                                      Case Manager