# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

        Plaintiff,    Case No. 18-20315

v.

                          Judith E. Levy
                          United States District Judge

Keith Kennedy (D-3),

                          Mag. Judge Elizabeth A. Stafford
        Defendant.

_____/

## OPINION AND ORDER DENYING THE UNITED STATES' MOTION FOR RECONSIDERATION [78]

Before the Court is the United States' motion to reconsider the Court's March 27, 2020 Order temporarily revoking Defendant Keith Kennedy's detention pursuant to 18 U.S.C. § 3142(i)(4). Because the United States has not demonstrated that the Court committed a palpable defect, nor that correcting the defect would result in a different disposition of the case, the motion is DENIED.

## BACKGROUND

On March 11, 2020, Magistrate Judge David Grand detained Defendant subject to a bond review hearing before the undersigned. (ECF

No. 71.) Judge Grand detained Defendant due to several violations of his pretrial release conditions, including the following: failing several drug screens, failing to report to pretrial services, failing to report to inpatient substance abuse treatment, and failing to report for a bond review hearing. (*See id.*; ECF No. 58.) At the United States' request, on March 26, 2020 the Court conducted a bond review hearing of Defendant's confinement at the Saginaw County Jail. The hearing took place telephonically due to federal, state, and court stay-at-home directives in response to the COVID-19 pandemic.

During this hearing, Defendant moved for bond. After hearing oral argument from both parties on the motion, the Court informed the parties that it expected to issue a written decision granting Defendant's motion. At no point during or after the hearing, aside from this motion, did the United States request to file a written response to Defendant's oral motion.

On March 27, 2020, the Court issued a written opinion temporarily revoking Defendant's detention pursuant to 18 U.S.C. § 3142(i)(4) for two reasons: first, because under the facts of this case, the danger posed to Defendant in the Saginaw County Jail by the COVID-19 pandemic

constitutes an independent compelling reason to temporarily release him from custody. Second, because temporary release is necessary for Defendant to prepare his pre-sentencing defense. (ECF No. 77.)

On March 30, 2020, the United States filed a motion requesting that the Court reconsider its temporary revocation of Defendant's bond. (ECF No. 78.) For the reasons set forth below, this motion is DENIED.

**LAW AND ANALYSIS**

Successful motions for reconsideration require that the movant "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled[,] but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Tyson v. Sterling Rental, Inc.*, No. 13-13490, 2015 WL 12819204, at *1 (E.D. Mich. March 31, 2015) (quoting *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997)). A movant demonstrates palpable defect by showing that there was "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496

(6th Cir. 2006). However, "the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

The United States argues that reconsideration is warranted for two reasons: because the Court failed to analyze Defendant's release under 18 U.S.C. § 3143, and because the Court failed to allow the United States to respond to Defendant's motion in writing. The United States also challenges the Court's reasoning with respect to bond release generally admidst the COVID-19 pandemic, though it does not frame this challenge as an independent argument in favor of reconsideration.

None of these arguments amount to a legal error, let alone a "palpable defect by which . . . the court and the parties have been misled." *Id.* Further, the United States has not demonstrated that adopting its approach would result in a different disposition of the case. *Id.* For these reasons, the motion is DENIED.

**1. The Bail Reform Act**

First, the United States incorrectly asserts that the Court erred "by granting bond with[out] consideration of the Bail Reform Act."[1] (ECF No. 78, PageID.322.) Specifically, the United States argues that the Court should have made findings pursuant to 18 U.S.C. §§ 3143(a)(1) and (g), which require the Court to consider certain factors when determining whether a post-plea defendant is likely "to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1).

The Court squarely addressed and rejected this argument in its written opinion:

> The Court notes that typical post-plea releases involve a finding "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). However, it is unnecessary for the Court to make a finding under 18 U.S.C. § 3143, because the Court is releasing Defendant pursuant to the independent statutory ground 18 U.S.C. § 3142(i)(4).

(ECF No. 77, PageID.310-311.) As the Court previously noted, 18 U.S.C. § 3142(i)(4) is a separate statutory ground, with separate statutory

---

[1] To the contrary, the Court made detailed factual findings pursuant to 18 U.S.C. § 3142(i)(4), which is part of the Bail Reform Act of 1984. 18 U.S.C. §§ 3141-3150.

5

considerations, distinct from the United States' suggested approach through 18 U.S.C. §§ 3143(a)(1) and (g). *See, e.g.*, *United States v. Thornton*, 787 F.2d 594, 594 (6th Cir. 1986) (Table decision) (suggesting that a district court could temporarily release a detainee pursuant to § 3142(i)(4) by subsequent order even after a prior order holding that the detainee was a flight risk or a risk to public safety pursuant to § 3142(g)). The United States' motion for reconsideration did not respond to this analysis, and the bulk of its motion "merely present[s] the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). Reconsideration is, therefore, not warranted on this ground. *Id.*

2. **Written response to the motion for bond**

The United States additionally argues, incorrectly, that it was "deprived of the time allowed under the court rules to respond to Kennedy's request in writing." (ECF No. 78, PageID.327.) Specifically, the United States cites Eastern District of Michigan's Local Rule 7.1(e)(2)(B), which requires that "[a] response to a nondispositive motion must be filed within 14 days after service of the motion." The United States additionally cites the Eastern District of Michigan's

6

Administrative Order 20-AO-024, enacted March 26, 2020, which notes that "[t]he government must respond to [a motion to review a detention order] within 72 hours, unless a different date is fixed by the assigned judge."

The United States' argument lacks merit for two reasons. First, and most importantly, the United States fully participated in the oral argument regarding Defendant's bond motion on March 26, 2020. Indeed, during that discussion, the United States made many of the same arguments that it raises again in its motion before the Court. Though the Court would certainly have considered a request to more fully brief the issue, at no point during or after the hearing did the United States request to respond in writing—even after the Court indicated that it anticipated issuing a written opinion granting Defendant's motion.

Second, neither of the United States' cited rules provide it with the right to respond in writing. Both Local Rule 7.1(e)(1) and 20-AO-024 are scheduling provisions that merely provide *deadlines* dictating the requirements for a timely brief. Additionally, both provisions are subject to modification by the Court. *See* 20-A0-024(4); E.D. Mich. L.R. 1.2.

The United States was not deprived of an opportunity to speak, to question Defendant under oath, or to request an opportunity to brief the issue, and in any event, it was not entitled to respond to Defendant's oral motion in writing. There is no legal error and reconsideration is not warranted on this ground. E.D. Mich. L.R. 7.1(h)(3).

3. **The COVID-19 pandemic**

Though not styled as an independent argument in favor of reconsideration, the United States additionally disputes the Court's reasoning with respect to the risk of COVID-19 at the Saginaw County Jail. Specifically, the United States notes that "there are currently no known cases of COVID-19 . . . where [Defendant] was housed . . . [m]oreover, officials at the Saginaw County Jail have also instituted a number of precautionary measures to reduce the risk of infection." (ECF No. 78, PageID.328-239.) The United States also disputes the Court's factual finding that Defendant's symptoms and underlying conditions render him particularly susceptible to COVID-19.[2] (*Id.* at PageID.331.)

---

[2] The United States suggests that Defendant's fever and cough were "not verified by any physician within the Saginaw County Jail." (ECF No. 78, PageID.331.) This argument is consistent with Defendant's credible testimony that, despite his flu-like symptoms, he had not been provided with medical attention. As far as verifying Defendant's cough, the Court notes that it was audible during the hearing.

8

The United States set forth a version of this argument during the March 26 hearing, and the Court's Order extensively considered—and rejected—it. The Court's conclusion bears repeating in full:

> The United States argues that release is improper here because it was unaware of any known COVID-19 cases at Saginaw County jail. However, this argument fails to address the facts of the current global public health crisis—particularly as Michigan prisons are beginning to see exponential spread of the disease. The seemingly preemptive nature of Defendant's release renders it no less necessary or compelling. To the contrary—as the above background makes clear—waiting for either Defendant to have a confirmed case of COVID-19, or for there to be a major outbreak in Defendant's facility, would render meaningless this request for release. Such a failure to act could have devastating consequences for Defendant and would create serious medical and security challenges to the existing prison population and the wider community.

(ECF No. 77, PageID.315.) To this point, on March 31, 2020 the White House announced that early mitigation efforts will make the difference between a minimum 100,000 to 240,000 deaths in this country, and a sobering 1.5 to 2.2 million. Aamer Madhani et al, *White House Projects 100,000 to 240,000 U.S. Deaths From Coronavirus*, TIME (March 31, 2020), https://time.com/5813489/white-house-projects-100k-240k-deaths-coronavirus/. The United States' arguments above are therefore particularly troubling because they ignore both the exponential nature of

9

COVID-19's growth[3] and the well-established principle that courts need not blind themselves to the likelihood of future harm merely because that harm has not yet occurred. *See, e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) (quoting *Helling v. McKinney*, 609 U.S. 25, 33 (1993) ("We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year . . . a remedy for unsafe conditions need not await a tragic event.")

The United States' argument in this case is additionally at odds with the rationale underlying both the United States Attorney General and the Governor of Michigan's independent directives to consider early release for detainees who do not pose a public safety risk. *Prioritization*

---

[3] Indeed, the Court's statistics from its March 27, 2020 Order are already woefully out of date. On March 27, 2020, the number of confirmed Michigan COVID-19 cases was 3,657, with 14 confirmed cases of a Michigan prisoner testing positive. As of this Order five days later, on April 1, 2020, that number is 7,615 for the state of Michigan and 58 for the number of Michigan prisoners. *Coronavirus*, Michigan.Gov, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html; Angie Jackson and Paul Egan, *Fear Among Officers, Families as Coronavirus Spreads in Michigan Prisons*, GovTech (March 31, 2020), https://www.govtech.com/em/safety/Fear-among-Officers-Families-as-Coronavirus-Spreads-in-Michigan-Prisons.html.

*of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020); Executive Order, No. 2020-29 (COVID-19) (Mar. 26, 2020). As the Court found by clear and convincing evidence in its March 27 Order, Defendant does not pose a public safety risk to the community. (ECF No. 77, PageID.311.) The Court need not repeat its specific reasoning as to Defendant here.

The United States does not argue that its COVID-19 analysis demonstrates a palpable defect requiring a different disposition of the case. But even if it did, the Court's separate finding—that 18 U.S.C. § 3142(i)(4) requires release so that Defendant may adequately prepare for his pre-sentencing defense—would still mandate temporary release. The United States does not challenge this analysis.

Accordingly, the United States' motion for reconsideration of its temporary detention revocation order is DENIED.

IT IS SO ORDERED.

Dated: April 1, 2020  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

11

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 1, 2020.

                                                    s/William Barkholz
                                                   WILLIAM BARKHOLZ
                                                   Case Manager