# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

|                | Plaintiff, | Case No. 18-20315 |
|---|---|---|
| v. | | Judith E. Levy<br>United States District Judge |
| Keith Kennedy (D-3), | | |
| | Defendant. | Elizabeth A. Stafford<br>Magistrate Judge |

_____/

## ORDER DENYING DEFENDANT KEITH KENNEDY'S MOTION FOR RECONSIDERATION OF COMPASSIONATE RELEASE DENIAL [148]

Before the Court is Defendant's motion requesting that the Court reconsider its denial of Defendant's motion for compassionate release. (ECF No. 148.) For the following reasons, Defendant's motion is DENIED.

**Background**

On September 4, 2020, the Court sentenced Defendant to 36 months' imprisonment after he pled guilty to one count of Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of 18 U.S.C. § 846. (ECF No. 114.)

On April 6, 2021, Defendant moved for compassionate release and/or reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the danger posed to him by the COVID-19 pandemic due to his obesity, hypertension, thyroid issues, COPD, sleep apnea, hepatitis c, and borderline diabetes constitutes an "extraordinary and compelling reason" for release. (ECF No. 138, PageID.797.) Through the subsequent briefing process, the Court learned that Defendant had declined the COVID-19 Pfizer vaccine prior to his request for compassionate release. (ECF No. 143-3, PageID.930.) The Court denied the motion on April 20, 2021, concluding that Defendant's "access to the COVID-19 vaccine mitigates the concern about extraordinary and compelling medical conditions that might otherwise compel release." (ECF No. 145, PageID.981.)

On April 30, 2021, Defendant filed a timely motion for reconsideration. (ECF No. 148.) In his thoughtful brief, Defendant argues that the Court should reconsider its decision for the following reasons:

- Defendant's reservations about the vaccine are reasonable given the following circumstances:
  - Defendant's reservations mirror those of many Bureau of Prison (BOP) and healthcare workers around the country "in light of the botched rollout and messaging

failures surrounding the safety of the two main COVID-19 vaccines in this country." (*Id.* at PageID.999);

o The BOP staff's reluctance to get vaccinated perpetuates Defendant's fears about the vaccine, and as of January 15, 2021, only "roughly half of BOP staff had opted to receive vaccines at prisons that received doses, meaning roughly half declined the vaccine." (*Id.*);

o "Given that vaccine refusal is common even among high-exposure front-line health care workers, this Court cannot fault Mr. Kennedy for this country's broader public health failures. Mr. Kennedy, isolated in BOP with frequent lockdowns and quarantines, has little access to outside resources to make an informed decision on the pros and cons of taking the vaccine[; he] wanted the opportunity to consult with his primary care physician once released before getting the vaccine." (*Id.* at PageID.1000-1001);

o The "FDA Emergency Use Authorization for the Pfizer vaccine explicitly states that it is 'not an FDA-approved vaccine,' as does the authorization for the Moderna vaccine. Unlike those of us in the community, inmates are powerless to further educate themselves on what an 'unapproved vaccine' means." (*Id.* at PageID.1001);

o The US Government has a "long and ugly tradition of medical experimentation on both prisoners and Black Americans." (*Id.*);

• Defendant is a 49-year old obese Black man with COPD, sleep apnea, hypertension, thyroid issues, hepatitis c, and borderline diabetes, and "every day Mr. Kennedy remains in custody compounds the risk to his life . . . regardless of [his] decision to decline vaccination." (*Id.* at PageID.998);

• Even if Defendant were to take the vaccine, it would "not guarantee him protection from new viral variants," whose

efficacy rates vary depending on the vaccine. Nor do scientists know for sure how long the efficacy from the vaccines will last. (*Id.* at PageID.1002-1003); and

- The Court should consider Defendant's sentence in quarantine during 2020 to be harsher, "both physically and psychologically, than [it] would otherwise normally be." (*Id.* at PageID.1007.)

**Analysis**

The Court will grant a motion for reconsideration if the movant demonstrates both a "palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled" and that "correcting the defect will result in a different disposition of the case." L.R. 7.1(h)(3).

Defendant's motion for reconsideration is DENIED because he cannot demonstrate a palpable defect in the Court's Order denying his compassionate release motion. Defendant has requested compassionate release because of the danger posed to him by the COVID-19 pandemic. (ECF No. 138.) He requested this release after declining BOP's offer of a vaccine that would significantly mitigate his chance of contracting COVID-19. As the Court set forth in its previous Order, the Centers for Disease Control have stated that the Pfizer vaccine is 95% effective at

preventing COVID-19 in individuals who have not previously contracted COVID-19. (ECF No. 145, PageID.981-982 (citing The Advisory Committee on Immunization Practices' Interim Recommendation for Use of PfizerBioNTech COVID-19 Vaccine—United States, December 2020, Centers for Disease Control (Jan. 28, 2021) https://www.cdc.gov/mmwr/volumes/69/wr/mm6950e2.htm?s_cid=mm69 50e2_w).) As courts in this district have consistently found, defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining BOP's attempts to protect them.[1] *See, e.g.*, *United States v. Austin*, No. 15-20609, 2021 WL

---

[1] Defendant cites three cases for the proposition that "[t]his Court should join other courts who have granted relief despite the availability of vaccines in the BOP." (ECF No. 148, PageID.999 (citing *United States v. Frost*, 16-cr-0582, 2021 WL 229665, at *6 (D. Md. Jan. 22, 2021) (granting compassionate release to high-risk inmate despite taking notice of BOP's implementation of a vaccination program, noting that the defendant's incarceration in the midst of a pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated"); *see also United States v. White* No. 3:17-CR-00104-2, 2021 WL 268719, at *4 (M.D. Tenn. Jan. 27, 2021) (granting compassionate release and noting new COVID-19 variants can evade vaccine-induced immunity); *United States v. Ramirez*, No. 18-CR-102, 2021 WL 254409, at *2 (E.D. Wis. Jan. 26, 2021) (granting compassionate release despite the BOP's vaccination campaign)).)

Notably, none of these decisions involve individuals who refused the vaccine. To the contrary, as the Court emphasized in its previous Opinion, judges in this district have consistently refused to release individuals in Defendant's position. (*See* ECF No. 145, PageID.981 (collecting cases).)

1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."). Accordingly, because there was no palpable defect in the Court's Opinion and Order denying Defendant's motion for compassionate release because of his potential vulnerability to COVID-19, Defendant's motion for reconsideration will be DENIED. L.R. 7.1(h)(3).

This decision, however, should not be read to commend or even to condone BOP's efforts to educate and vaccinate its incarcerated population. As Defendant correctly points out, as of April 2021, less than half of BOP workers had themselves elected to get vaccinated. *See, e.g.*, Ozge Terzioglu, *Prison Staff Across the Nation Refuse COVID-19 Vaccine Despite Widespread Outbreaks*, The Davis Vanguard (Apr. 28, 2021), https://www.davisvanguard.org/2021/04/prison-staff-across-the-nation-refuse-covid-19-vaccine-despite-widespread-outbreaks/; Nicole Ogrysko, *Lawmakers alarmed by high COVID-19 vaccine refusal rate at BOP workforce*, Federal News Network (Mar. 22, 2021), https://federalnewsnetwork.com/workforce/2021/03/lawmakers-alarmed-

by-high-covid-19-vaccine-refusal-rate-at-bop-workforce/; Courtney

Buble, *Less Than Half of Federal Bureau of Prisons Staff Have Accepted COVID Vaccines From the Agency*, Government Executive (Mar. 18, 2021), https://www.govexec.com/management/2021/03/less-half-federal-bureau-prisons-staff-have-accepted-covid-vaccines-agency/172775/. This monumental failure has undoubtedly had a profound impact on the incarcerated population, who—as Defendant, again, correctly points out—are far more limited than the general public in their ability to conduct research and in the information to which they have access when making an informed decision about whether to get vaccinated.

Whatever the source of Defendant's particular concern about the COVID-19 vaccine, the Court hopes to help lessen his hesitation, along with that of BOP staff members who have also expressed a tragic and life-threatening reluctance to get vaccinated. The Court provides this information for the sake of Defendant and BOP employees in its hope to protect them as well as their communities, including the prison population who remain at risk of contracting COVID-19 as long as they remain unvaccinated. Between December 14, 2020 and June 14, 2021, health officials administered more than 310 million doses of COVID-19

vaccine in the United States. *Reported Adverse Events*, Centers for Disease Control (June 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html. Administration of the COVID-19 vaccines has been subject to "the most intense safety monitoring in U.S. history," with the CDC aggressively collecting data on vaccine safety and consolidating it in the Vaccine Adverse Event Reporting System (VAERS). *Id.* The "FDA [Food and Drug Administration] requires healthcare providers to report any death after COVID-19 vaccination to VAERS, even if it's unclear whether the vaccine was the cause. A review of available clinical information, including death certificates, autopsy, and medical records, has not established a causal link [of death] to COVID-19 vaccines." *Id.*

The CDC has noted that there are an extremely small number of individuals who, after vaccination, have experienced anaphylaxis (severe allergic reaction)—"approximately 2 to 5 people per million"—and thrombosis (blood clots)—approximately 37 confirmed reports out of the 310 million vaccinated. *Id.* However, these experiences are rare and may be mitigated by the on-site medical monitoring and care available during the waiting period after vaccination. *See id.*

Finally, the Court wishes to address Defendant's argument that his mistrust of the COVID-19 vaccine is reasonable because of his identity as a Black man given the United States government's "long and ugly tradition of medical experimentation on both prisoners and Black Americans." (EF No. 148, PageID.1001-1002.) Defendant writes:

> Histories of exploitation, marginali[z]ation, and disempowerment are embedded in some personal decisions of non-participation" for patients of color. Nuriddin et. al., *Reckoning with histories of medical racism and violence in the USA*, 396 Lancet 10256 at 949 (Oct. 3, 2020), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)32032- 8/fulltext. And this is not relegated to mere history. Medical racism is alive and well today: "Every day, Black Americans have their pain denied, their conditions misdiagnosed, and necessary treatment withheld by physicians." Bajaj et. al., *Beyond Tuskegee — Vaccine Distrust and Everyday Racism*, New England J. of Medicine (Jan. 20, 2021),
> https://www.nejm.org/doi/full/10.1056/NEJMpv2035827.
>
> Even in the broader community, "every Black person knows their personal challenges in navigating health care institutions, perhaps even more so during this pandemic. Daily subtle mental assaults are more salient in explaining a lack of trust in medical institutions and, by extension, in Covid vaccines." *Id.* Mr. Kennedy is not the only Black American with such concerns. According to researchers, about 35% of Black adults say they definitely or probably would not get vaccinated with the COVID-19 vaccines. Hamel et. al., *COVID-19 Vaccine Monitor: December 2020*, KFF (Dec. 15,

2020) https://www.kff.org/coronavirus-covid-19/report/kff-covid-19-vaccine-monitordecember-2020/.

(*Id.* at PageID.1001-1002.) The undersigned appreciates Defendant's perspective and is sensitive to the complex racial elements at play regarding distribution of the COVID-19 vaccine. The undersigned is not personally a member of the Black community and cannot speak to the specific mistrust that Defendant is feeling on this basis. However, the undersigned encourages Defendant to keep an open ear toward the Black voices who are encouraging COVID-19 vaccination while speaking directly to race discrimination and the racial undertones surrounding vaccination hesitancy. *See, e.g.*, Dr. Eugenia South, *I'm a Black doctor who didn't trust the COVID vaccine. Here's what changed my mind.*, THINK (Jan. 22, 2021), https://www.nbcnews.com/think/opinion/i-m-black-doctor-who-didn-t-trust-covid-vaccine-ncna1255085 (discussing the author's decision to get the vaccine after seeing Black representation "at the heart of [] vaccine development," "educat[ing her]self about how the vaccine had been created," "read[ing] the experiences of people of color and trust[ing] Black physicians who participated in vaccine trials," acquiescing to her mother's repeated requests that she get vaccinated, and reading the "Pfizer trial [] graph [] showing the continued rise of

COVID-19 infection in the placebo group compared to the near complete

drop-off in those who received the vaccine").

The Court is sympathetic to Defendant's mistrust of the vaccine and

the government actors distributing it, particularly given the

government's mixed vaccine messaging in 2020[2], the complex racial

dynamics at play, and the closed social environment in which Defendant

lives.[3] It is especially tragic that BOP employees are fostering an

environment in which Defendant's understandable—but unfounded—

fears may flourish. But "[a]llowing federal prisoners to qualify for

---

[2] *See, e.g.*, Sarah Krouse *et al, Behind America's Botched Vaccination Rollout: Fragmented Communication, Misallocated Supply*, Wall Street Journal (Feb. 18, 2021), https://www.wsj.com/articles/behind-americas-botched-vaccination-rollout-fragmented-communication-misallocated-supply-11613663012.

[3] The Court also appreciates, and agrees with, Defendant's argument that his sentence should be considered harsher than normal during the previous year of incarceration due to the especially challenging living circumstances while incarcerated during a global pandemic. However, this argument does not impact the Court's analysis regarding whether extraordinary and compelling circumstances exist justifying Defendant's release.

Additionally, with respect to Defendant's concern that the Pfizer vaccine may not protect him from all new COVID-19 strains, such a concern is speculative at this time and the Court is unwilling to discount the vaccine's demonstrated efficacy on this basis. *See, e.g.*, Ewen Callaway, Nature, *Pfizer COVID vaccine protects against worrying coronavirus variants* (May 6, 2021), https://www.nature.com/articles/d41586-021-01222-5 ("Findings [] suggest that current RNA vaccines [including Pfizer] are a potent weapon against the most worrisome immune-evading variants [of COVID-19].").

compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated. The [C]ourt is exceedingly hesitant to provide prisoners an incentive to *increase* their risk of contracting COVID-19 and developing severe symptoms. Such a result would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release." *Austin*, 2021 WL 1137987, at \*2.

Accordingly, for the foregoing reasons, Defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: June 24, 2021                                  s/Judith E. Levy
Ann Arbor, Michigan                                JUDITH E. LEVY
                                                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 24, 2021.

                                                              s/William Barkholz
                                                              WILLIAM BARKHOLZ
                                                              Case Manager